FILED
03 APR 17 AM 9:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

JOCELYN BIGGS,

    PLAINTIFF,

v.                                                   CASE NO.: CV-02-J-1293-S

JOHN E. POTTER,
POSTMASTER GENERAL,

    DEFENDANT.



## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 7), evidence in support of said motion (doc. 8) and memorandum in support of its motion, to which the plaintiff has responded by submitting evidence (doc. 10) and a response in opposition. The defendant thereafter filed a reply. The court having considered the pleadings, evidence and memoranda of the parties finds as follows:

### I. Factual Background

The plaintiff was employed by the United States Postal Serivce as a Data Conversion Operator at the Birmingham Remote Encoding Center. Defendant Exhibit A, attachment 1. She suffers from ongoing cervical spine problems, but could still perform her job duties. Defendant Exhibit A, attachments 17, 18 and 20. She was thereafter diagnosed with depression. Defendant Exhibit A, attachment 21. Due to

15

the depression, the plaintiff requested a leave of absence in October, 1998. Plaintiff Exhibits 1 and 3. She was then terminated for failing to perform her job duties of her Bid Assignment. Defendant Exhibit A, attachment 1. The plaintiff sues for violations of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 *et seq.*

Because of the importance of the sequence of events in the case before the court, the court finds the following facts to not be in dispute and the following time line to be of relevance:

10/6/98: Plaintiff's last day in "pay status."

10/20/98: Plaintiff requests a leave of absence due to depression. Plaintiff Exhibit 1. The sole evidence is a 10/16/98 letter from a doctor saying she is depressed, her "physical symptoms have not abated" and "her condition" is exacerbated by her difficulties performing her job. Plaintiff Exhibit 1; Plaintiff Affidavit (plaintiff exhibit 2) ¶ 8.

11/17/98: Plaintiff states her supervisor contacted her by letter for a current report on her medical condition. Plaintiff affidavit ¶ 7.

11/20/98: Plaintiff responds in writing to supervisor that she asked for leave of absence as of 10/20/98. Plaintiff affidavit at ¶ 8; plaintiff exhibit 3.

11/25/98: Plaintiff is sent Letter of Removal for failure to perform duties. Defendant Exhibit A, attachment 1. Effective date of letter is 12/28/98. Letter states she is removed because she cannot perform the job requirements of the job she bid on.

11/30/98: The Department of Labor accepts plaintiff's occupational disease claim for aggravation of cervical strain and tendinitis of right

2

wrist. Plaintiff affidavit ¶ 11, 12; Plaintiff Exhibit 4.

12/23/98: Plaintiff submits a grievance form to her Union for Letter of Removal. Plaintiff Exhibit 9.

1/27/99: Plaintiff requests she be allowed to return to work. Plaintiff affidavit ¶ 23.

2/18/99: Plaintiff receives orders she that she is to report for deployment to Bosnia. Defendant Exhibit A, attachment 8.

2/26/99: Plaintiff reports to her Army Reserve unit for deployment to Bosnia. She notified defendant of deployment. Plaintiff affidavit ¶ 19, 24.

4/6/99: 12/23/98 grievance is dismissed as untimely. Plaintiff exhibit 7.

4/6/99: Plaintiff is removed from pay roll records by defendant (Plaintiff is in Bosnia and does not know she has been removed from pay roll).[1] Plaintiff affidavit ¶ 26.

8/11/99: Plaintiff returns from Bosnia. Plaintiff affidavit ¶ 27; defendant Exhibit A, attachment 9.

8/99: Plaintiff again requests to return to work. The request is denied. Plaintiff affidavit ¶ 28.

10/7/99: Plaintiff files informal EEO complaint, alleging she was terminated in 12/98 due to physical and mental disability. Defendant Exhibit A, attachment 11.

11/5/99: Plaintiff files formal EEO complaint. Defendant Exhibit A, attachment 12.

---

[1]Article 16, Section 5 of the Disciplinary Procedures to which plaintiff was subject contains the requirement that an "employee shall remain on the rolls (non-pay status) until disposition of the case has been had either by settlement with the Union or through exhaustion of the grievance-arbitration procedure." *See* Defendant Exhibit A, attachment 5.

3

12/21/99: EEO notifies plaintiff her complaint has been dismissed as untimely for failing to contact EEO within 45 days of act of discrimination. Defendant Exhibit A, attachment 13.

5/30/00: Decision on appeal to EEOC that EEO finding that complaint is untimely is affirmed. Defendant Exhibit A, attachment 14.

9/28/00: Plaintiff brings initial EEO contact for 4/6/99 termination, asserting she first learned of the termination from a credit report on 9/25/00. Defendant Exhibit A, attachment 6.

10/14/00: Plaintiff files formal EEO complaint, asserting she was discriminated against based on a disability. Defendant Exhibit A, attachment 7.

12/21/00: Request for reconsideration of EEOC determination of 5/30/00 is denied. Defendant Exhibit A, attachment 15.

8/13/01: EEOC is notified by plaintiff that she suffers from clinical depression. Plaintiff Exhibit 5.

2/25/02: Plaintiff's EEOC complaint dismissed with finding of no discrimination based on a finding of no substantially limiting physical impairment. Defendant exhibit A, attachment 10.

5/24/02: This lawsuit is filed.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the

summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

## III. LEGAL ANALYSIS

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). With these standards in mind, the court considers the plaintiff's claims.

The defendant asserts the plaintiff's Rehabilitation Act and FMLA claims are both time barred, as this case was filed on May 24, 2002, which is more than three years after the plaintiff first requested a leave of absence in October, 1998. The defendant also argues that the plaintiff was not eligible for FMLA leave in October, 1998 because she did not have the requisite 1250 hours of time worked in the preceding twelve months. Defendant Exhibit C. *See also* Defendant Exhibit A, attachment 10, at 6. The plaintiff states this was due to her not receiving credit for annual leave or for time she was deployed.

The defendant also argues the plaintiff failed to exhaust the administrative remedies under the Rehabilitation Act before bringing this action. Actions under the Rehabilitation Act against federal government employers must satisfy the exhaustion of remedies requirement as stated by Title VII. *Doe v. Garrett*, 903 F.2d 1455, 1459-1460 (11th Cir.1990); *Baker v. Peters*, 145 F.Supp.2d. 1251, 1255 (M.D.Ala.2000). Title VII requires the timely filing of administrative charges. Under 29 CFR §

1614.105(a)(1), plaintiff had to initiate contact with the EEO within 45 days of the effective date of the action about which she complains. A federal employee's failure to undergo the administrative procedures and to adhere to the stated deadlines is a ground for dismissal of her action for failure to state a claim. *Baker*, 145 F.Supp.2d at 1256, citing *Manning v. Carlin*, 786 F.2d 1108, 1109 (11th Cir.1986). The question before this court is when that 45 days began to run. The defendant states the plaintiff's November 5, 1999 formal EEO charge was untimely for the removal effective December 28, 1998.

Of course, like all time limits in discrimination cases, the 45 days is subject to equitable tolling. *See Zipes v. Transworld Airlines, Inc.*, 455 U.S. 385, 395-398 and n. 11, 102 S.Ct. 1127, 1133-1135, 71 L.Ed.2d 234 (1982); *Doe v. Garrett*, 903 F.2d at 1460. In the light most favorable to the plaintiff, she filed a grievance on December 23, 1998 stating she was mailed a Letter of Removal on November 25, 1998, stating she was removed effective December 28, 1998. Plaintiff exhibit 9. Thereafter, she was told on January 27, 1999 that she could not return to work. The plaintiff sets forth no reason the Letter of Removal on November 25, 1998 should not be considered as notice of her termination. The court finds the plaintiff knew or should have known, at least by December 23, 1998 when she filed her grievance about the

November 25, 1998 Letter of Removal, that she could not return to a pay status.[2] *See* plaintiff exhibit 9; defendant exhibit 1, attachment 12. Having been told she could not return to work, the plaintiff should have known she was terminated. *See Cocke v. Merrill Lynch*, 817 F.2d 1559, 1561 (11th Cir.1987) ("The [time] period is counted from the date the employee receives notice of termination"). By December 28, 1998, her termination date, the plaintiff had already filed a grievance, demonstrating her knowledge of the adverse action taken. Although it was ongoing, the grievance procedure does not stay the 45 day time limit to file an EEO charge. *See Stafford v. Muscogee Co. Brd. of Ed.*, 688 F.2d 1383, 1388 (11th Cir.1982); citing *Delaware v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 66 L.Ed.2d 431 (1988).

Thus, even applying the principle of equitable tolling, in the light most favorable to the plaintiff, the court finds she had 45 days from December 28, 1998 to file an EEO complaint about the alleged discrimination. This would have allowed the plaintiff until February 11, 1999 to file her claim. While the plaintiff argues that her reporting for duty in Bosnia on February 26, 1999 should toll the time period to file a charge of discrimination, by the date she reported for duty, the 45 days had already run. In the light most favorable to the plaintiff, her complaint is untimely. This is especially true given that in both of her EEOC charges, the plaintiff lists December

---

[2]The plaintiff admits she was terminated on December 28, 1998. Plaintiff affidavit ¶ 29.

28, 1998 as the date of the discriminatory action.

The plaintiff's second claim, relating to her name being removed from the payroll altogether on April 6, 1999, cannot extend this time or serve as the basis of a new claim. The plaintiff knew or should have known no later than December 28, 1998 that she had no job waiting for her return. *See e.g. Hargett v. Valley Federal Savings Bank*, 60 F.3d 754, 761 (11th Cir.1995); *Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023, 1025 (11th Cir.1994). This court can not find that the final removal of the plaintiff's name from the payroll was a new act of discrimination. An employer's refusal to undo a prior discriminatory act is not, in itself, a new act of discrimination. *Everett v. Cobb County School Dist.*, 138 F.3d 1407 (11th Cir.1998), citing *Lever v. Northwestern Univ.*, 979 F.2d 552, 556 (7th Cir.1992). Claims of discrimination accrue when the plaintiff is informed of the discriminatory act. *Everett*, 138 F.3d at 1410; citing *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (period commenced at time the ... decision was made and communicated to the plaintiff). Thus, the plaintiff knew by December 23, 1998, when she filed her grievance, that she was terminated. The plaintiff's filing of this action before this court within the time allowed after receiving a final agency decision from the EEOC does not "cure" the untimely complaint to the EEO in November, 1999. Thus, the plaintiff's Rehabilitation Act claim is due to be dismissed.

Additionally, as the court finds the FMLA claim is barred based by the statute

of limitations, the court does not consider the claim on its merits. *See* 29 U.S.C. § 2617(c)(1) and § 2617(c)(2). Assuming the plaintiff's termination was a willful violation of the FMLA, she had no more than three years to file suit.[3] At the latest, this was December 28, 2001. Additionally, while the plaintiff argues that this suit was timely filed because the Final Agency Decision was not rendered until February 25, 2002, that finding does not extend the statute of limitations under 29 U.S.C. § 2617. The EEO had previously determined that the plaintiff failed to file a claim within the prescribed period. *See* defendant Exhibit 1, attachments 3, 4, 13 and 14. In the Postal Services final agency decision on the October, 1999 complaint, it found such complaint to have been initiated beyond the regulatory time limits. Defendant exhibit 1, attachment 13. In the decision on appeal to the EEOC, the same finding was again rendered on May 30, 2000. Defendant exhibit 1, attachment 14. A request for reconsideration was subsequently denied on December 15, 2000 and the plaintiff was notified of her right to appeal that decision to the District Court within 90 days. *See* 42 U.S.C. § 2000e-16(c). However, just as the timely filing of this action cannot cure the defects in the plaintiff's claim under the Rehabilitation Act, it cannot cure filing of an FMLA outside of the statutory period.

---

[3]The court does not decide whether or not the alleged violation of the FMLA was willful. The court has not considered whether or not such a violation even occurred, as even if the plaintiff was terminated for taking leave which was permissible under the FMLA, this claim is barred by the statute of limitations.

In her response to the defendant's motion for summary judgment, the plaintiff does not address any basis on which this court could find her complaints to the EEO and this suit timely filed. The court having considered the foregoing, and being of the opinion the defendant's motion for summary judgment is due to be granted on all counts of the defendant's complaint, the court shall so order.

**DONE** and **ORDERED** this the _17_ day of April, 2003.

                                            INGE P. JOHNSON
                                            UNITED STATES DISTRICT JUDGE